Good morning. My name is Gary Pemberton. With me is Franklin Contreras of Shulman, Hodges and Bastion. We represent the appellant and cross appellee, the Chapter 7 trustee, Robert Goodrich. Before beginning, just as a point of procedure, we have been given 15 minutes to argue. There is both an appeal and a cross appeal. My question to the panel would be should I also address some issues on the cross appeal or wait for the rebuttal? You should do however you want, but you've got 15 minutes. In your honor, I would like to reserve five minutes then for rebuttal. Alright. The first thing I'd like to address is an issue that's been raised by the cross appellant with regard to the finding, excuse me, the holding of the district court that the apartment trust was an invalid trust because it was created to defraud Mr. Michael's creditors. The cross appellant makes the argument several times that what the district court did here was improper because it made a factual finding. I would like to point out to the court and argue that that was not what the district court did in this situation. What the district court did was it took the factual findings of the bankruptcy court and Mr. Michael's own admissions at trial and concluded from that evidence that the only legal conclusion one could reach was that indeed the apartment trust was created to defraud Mr. Michael's creditors. I'd like to go through first of all the bankruptcy court's findings and then point to the court also the admissions that were made by Mr. Michael's at trial to explain why the district court had to reach the legal conclusion it did. First of all, the bankruptcy court found that when the debtors were insolvent when the Koki stock was transferred into the apartment trust. Second, the bankruptcy court found that Mr. Michael's transfer of the Koki stock into the apartment trust was made for the fraudulent purpose of avoiding his creditors. Third, the bankruptcy court found that the transfer of the Koki stock into the apartment trust was made simultaneously with the apartment trust creation on June 15, 1992. In the appellee's brief, they dispute this. However, the parties stipulated before trial as part of the pretrial order that the gift letter was signed on June 15, 1992, the same day that the apartment trust was created. This can be found at the record at page 2581, lines 22 through page 2582, line 1. And finally, the bankruptcy court found as part of its findings that the Koki stock was transferred into the apartment trust because Mr. Michael's at that time intended to pursue an appeal on behalf of Koki Woods and he didn't want to go through all the trouble of doing that work only to have his creditors someday come after the Koki stock. Now, these were Mr. Michael's admissions at trial. First of all, he admitted at trial that one of the purposes of creating this second trust, this trust that had language identical to the Grove Trust, the first trust, one of the purposes was to hold the Koki stock. That was a purpose he had. He also testified through an interrogatory response that was read at trial that his intent in creating the apartment trust with language identical to the Grove Trust was to, quote, establish a second trust that would have as its asset the stock and, quote, further distance the debtors from the Koki stock. He also testified that when he created the apartment trust, he was concerned about protecting his assets from his creditors. And finally, the evidence was undisputed that the debtors falsely designated Mr. Briones as the trustor and settlor of the apartment trust, although he neither funded the trust nor created it. So what the evidence established at trial was that Mr. Michaels created the apartment trust as a vehicle to hold his fraudulent transfer. And based upon this evidence, the district court concluded that, pursuant to Probate Code Section 15203, this trust was invalid as a matter of law. I'd like to also address now the district court's reversal of the bankruptcy court's other finding, and that was that the Grove Trust was Mr. Michaels' alter ego. Now, the bankruptcy court made two important findings at trial. First of all, that Mr. Michaels dominated and controlled all decisions, and this is the word he used, all decisions relating to the Grove Lots. And also that Mr. Michaels dominated and controlled the decisions of the Grove Trust and the use of its assets since the acquisition of the Grove Lots in 1997. And based upon that evidence, the bankruptcy court concluded that the Grove Trust was Mr. Michaels' alter ego. The district court did not take exception to these findings, nor could it, because there was substantial evidence to support them. Rather, as a matter of law, the district court concluded that because Mr. Michaels was neither the trustee nor the beneficiary of the Grove Trust, he could not be the alter ego of that trust. Right. The district court was of the view that equitable ownership is not sufficient to confer alter ego status. And the court felt it was bound by the holding of this court in Securities Exchange Commission v. Hickey that actual ownership of stock is required for an alter ego finding. Why isn't that true? I beg your pardon, Your Honor? Why isn't that true? Well, that isn't true for – well, first of all, let's – I've already discussed in the briefs why that's dict in the holding. But why that isn't true is that because under California law, both appellate courts and the California Supreme Court have found equitable ownership to exist in situations where the alleged alter ego did not own shares in the corporation. But if we disagree with you regarding whether or not that language is dicta, aren't we bound by it? No, you aren't, Your Honor. Your Honor, we've cited the court to – I believe it's the Enri Watts opinion, which essentially stands for the proposition that the Ninth Circuit or a court of appeal, a federal court of appeal, is to look not only to what the Supreme Court of the state in question would pronounce, but also the courts of appeals pronouncements, and should only go in the opposite direction from those holdings if it believes that the Supreme Court of that state would not – that there is not clear and convincing evidence that the Supreme Court of that state would reverse the holding of the court of appeal. But we've done that already. So once one of our courts, once one of our panels has done that, we're bound by the ruling of that panel. We can't disagree with that as another panel. Well, Your Honor, in the case of – I've cited in the brief, and I'm looking for the citation here. I've cited to a case in the brief, and I can't find the citation at this moment. But anyway, I've cited to a case in the brief where, indeed, the Ninth Circuit did reverse direction based upon – based upon a subsequent court of appeals decision. And the opinion that I'd like to focus on is the opinion of Troy. Now, the district court, it should be said, did not have Troy in front of it when it rendered its ruling. Troy is subsequent to the district courts holding in our case. But in Troy, the court, indeed, did find that this was a case involving Farmers Insurance Exchange, Farmers Group, and a service company that worked with them. But it imposed alter ego law built on the managing agent and an attorney in fact. Is that right? Yes. Although the managing agent didn't own the company. Right, right. At issue, which was an insurance exchange. So does that make that case significantly different from ours? Well, it certainly makes our case different in the sense that Hickey, if one were to agree with the district court, Hickey would stand for the proposition you actually have to hold shares. Right. In order to be an alter ego. Is there anything in Hickey or Fremark that says that you can't have an equitable ownership? Your Honor, I'm glad you pointed that out. The district court went much further than SEC versus Hickey. All SEC versus Hickey said was that in this situation, because there was not an ownership of shares, there was not going to be a finding of alter ego. It did not say that there could not be equitable ownership of shares. And we cited the court both to the Minton opinion, to the Tri-State opinion, and finally to the Troik opinion. Which all have indicated that equitable ownership of shares, and in the Tri-State equipment case, an equitable control over the trust is sufficient to find alter ego liability. And I would also point out to the court that the only California trust case before this court today is the Tri-State equipment case. And this is a very significant case because it really gets to the heart, I think, of what the alter ego doctrine is all about and what equity demands in this situation. The California Supreme Court has said in the Messler opinion that at the end of the day, the whole point of the alter ego doctrine is that justice be done. And in the Tri-State equipment case. Of course, that's a district court case. It is a district court case, but it's interpreting California law. It's stated the law has long recognized that the actual substance of a transaction occurrence controls over its form. Again, quoting something that was said earlier this morning. In light of the equitable nature of the alter ego doctrine, application of the equitable ownership principle ensures that substance prevails over form. If this Court were to affirm the district court's opinion that Mr. Michaels is not the alter ego of the Grove Trust simply because he was neither a beneficiary or a trustee of that trust, it would be putting form over substance. Because essentially, it would be rewarding Mr. Michaels for having the cunning and foresight to put a straw man in his trustee, Mr. Brioni's, and then paying him handsomely to do his bidding. That cannot be the right result under California law or under the equitable principles of the alter ego doctrine. All right, counsel. You want to say it's time for rebuttal? Yes, Your Honor. All right. Thank you. Thank you, Your Honors. I'm Martha Warriner, arguing on behalf of appellant and cross appellee, Juan Brioni, as trustee of the two trusts at issue here today. The Schwarzkopf's, the debtors in this case, are also present in the court. They represent themselves pro per in this case and have waived oral argument and will join in my argument. Addressing some of the points that Mr. Pemberton just made. In this instance, we have an intermediate appeal here. This case started out in the bankruptcy court, was tried in the bankruptcy court, appealed to the district court. Many of the bankruptcy court's decisions were reversed at that level, and we have now appealed and are here. But unlike your normal course of appeals, the district court was not the trial level. Its rulings are really disregarded at this level. We go back to the bankruptcy court and we review whether those decisions were correct, whether there are any challenges to the findings of fact, and for the most part, there are none. And while Mr. Pemberton has raised some factual issues and cited some evidence that goes beyond the factual findings made by the court, he did not, his client did not appeal the bankruptcy court's findings as clearly erroneous. He correctly stated that the bankruptcy court found that the Schwartzkopf's were insolvent at the time, that they made the transfer of the stock, that there had been something in Mr. Schwartzkopf's mind regarding not being able or not wanting to allow his creditors to have access if he was successful on an appeal that the corporation was prosecuting at that time. And ultimately, the bankruptcy court found that it was a fraudulent conveyance. It also found that the benefit, that the apartment trust, which is the one that was ruled invalid by the district court, the bankruptcy court found that it was established for a valid purpose, that purpose being the benefit of the minor child. It then found in a separate finding that the stock of the corporation was transferred into that trust, and that that transfer was a fraudulent transfer. Based on those findings, it held that it was established for a proper purpose, and that it was therefore a valid trust. And what is at issue here in Mr. Pemberton's arguments regarding invalidity of this trust is actually a question of whether a fraudulent transfer should be treated differently, depending upon who the transfer is made to. Because it's quite clear that if the stock had been transferred to a corporation or an individual directly, the seven-year absolute bar statute of limitations under California law would have precluded any challenge to that transfer. Counsel, do you challenge the view that a trust created for the purpose of defrauding creditors is illegal? I do. So it's your argument that even if a trust is created for the purpose of defrauding creditors, it is nonetheless valid? There is no law on point on that issue ruling that it is invalid. There is a case cited by... What about the California probate code that says a trust may be created for any purpose that is not illegal or against public policy? And there is no case law on point interpreting that. What about the plain language of the statute? Well, there is, Your Honor, there are two restatements, one of which directly cites that language, and then distinguishes trusts that are set up for purpose of defrauding creditors. There are purposes that are illegal, such as promoting the violation of a criminal law. How about in red marriage of Dick? It is well settled that a trust created for the purpose of defrauding creditors or other persons is illegal and may be disregarded. I'm not disputing the language, Your Honor. Clearly it says that. Clearly the probate code says that. So why shouldn't we take that language for what it says? Because there is also, first of all, in red marriage of Dick did not invalidate the trust. It simply held that in that instance the income from the trust, the assets of it, would be considered by the family law court in establishing the amount of support. It did not set the trust aside as invalid. There is no case law that has been cited that actually set aside a trust which was the recipient of a fraudulent conveyance. Also, you have the distinction here made by the... But not fraudulent conveyance, it's the creation of a trust. Well, you have the bankruptcy court's finding that the trust was created for a valid purpose. The bankruptcy court never found that it was created for the purpose of avoiding creditors. But it was used improperly. Well, it received a fraudulent conveyance, yes. But the trust was used to carry out the purpose of benefiting the minor child. But if it used... Why wouldn't that vitiate the trust itself if it received what was, in fact, a fraudulent conveyance? That's what the case law seems to suggest. Well, given that the statute of limitations for challenging the fraudulent conveyance had clearly expired before this action was brought, why would the trust be invalidated when the same transfer made directly to the beneficiary could not have been set aside? Why does the fact that it was... Because trust law is different, and it's different for a reason, because a trustee is supposed to be acting out of purposes that are pure. Well, and there's no evidence that this trustee didn't. The bankruptcy court, one of its findings, was not only was the trust created for the benefit of the minor child, but that the minor child actually received substantial benefit from the trust. Yes, there were other findings by the district court that the trustee who was put into place did the bidding of the settler of the trust. That was not quite the finding, Your Honor. The bankruptcy court found that while the trustee and the settlor did cooperate and act in concert on certain matters, that the court did not find that there was a domination. By the settlor, that he did not act for his own benefit. The actions that were taken primarily also benefited the minor child, the beneficiary. If I may address the issue of alter ego for a moment, before I run out of time. This is a matter of law on alter ego, and California law is clear. Starting with Riddle v. Lushner, the California court has ruled that ownership is necessary. The only issue is what is ownership? Cases have used words like, first of all, obviously Riddle used shareholder. That's an indicia of ownership on a certain type of entity. In other instances, they've used equitable ownership where there was a corporation that had not yet issued shares. But clearly, someone was still the equitable owner of that corporation. There have been other cases that used the words actual ownership, which I think is probably the more accurate description. Because every one of those cases found actual ownership in one form or another. There was a case where. Control, the case law has held that control is not ownership. No, but isn't it relevant when the court is sitting on the Woolsack and looking at it as a matter of equity? Control can be quite relevant. Well, the case law suggests that ownership is the primary requirement and that without finding ownership, you don't even move on to the other indicia of alter ego, which comes under the umbrella of control. Equitable ownership, Your Honor, can mean a lot of things. In the cases where it doesn't help you. Well, in the case law, it has been used to describe an actual ownership other than legal title to the shares. It held that a wife with a community property interest in stock that was held in her husband's name had an actual or equitable ownership interest in the shares. And in that stock, we know under community property law that that's not really equitable ownership. That's actual ownership, because community property law says that 50 percent, she owns a 50 percent and a management interest in community property, even though legal title may be held in her husband's name. I'm not saying these are the facts of this case, but if there were a trust and the settler of the trust dictated all of the payments that were made from the trust and directed the trustee 100 percent as to how to administer the trust, would that be sufficient to convey equitable ownership in your view? Not unless there was the ability to actually act on it. What do you mean the ability to actually act on it? To actually convey or encumber those assets. That's what the courts have found interpreting California law. If the settler is able to do it through the trustee, if he tells the trustee, convey this property, and the trustee does it unquestionably, without question, is that enough to bestow equitable ownership on the settler? Not according to the case law, Your Honor. Not if they don't have the ability to convey or encumber assets. If they have the ability through the trustee to do it, that's not enough in your view? Not in line with the case law, Your Honor, no. So unless they physically sign the deed or physically write the check, it's your view that there can never be equitable ownership? It's my view that there is never sufficient ownership to establish alter ego. Right. So you don't accept the principle of equitable ownership in the trust area? Well, Your Honor, again, I look back to what... That's a yes or no question. It's a question of the meaning of equitable ownership. What's your definition of equitable ownership? My definition of equitable ownership is where there is not legal title, but there is still the ability, using the example of the wife with community property, even though she did not have legal title, legally under California community property law, she had the ability to convey that stock. So that's really actual ownership? That's, I think, actual ownership. If you don't believe in equitable ownership. Not in that way, no, Your Honor. And then we also have the... Can we look at other factors that bear on control, as Henry Dick suggests, to determine whether there was equitable ownership? That is, are we narrowly confined by your definition of equitable ownership, or should we take a more expansive view? Well, in my view, we're narrowly confined by the case law, Your Honor. And there has been... Well, was your definition derived from the case law, counsel? My definition derives from the case law. Henry Dick doesn't seem to go along. Well, Henry Dick didn't invalidate the trust, or as I said, all they found was that the income and the assets of the trust should be considered for purposes of determining spousal support. I don't believe they ever found that he actually had control over the trust. Just that he had enough... Yes, but they looked at the issue of control as one of the indicia. They didn't, they weren't so narrow. So, you know, as Senator of the Court of Appeals, we must look at this case, but beyond this case for any of our pronouncements. So, you know, it begs the question, how do we define, or what do you glean from the various cases about the definition of equitable ownership? Well, looking at the California law and the Ninth Circuit's rulings on it, I find, I would argue that it, particularly in the area of the trust, because it is a case on point, that without the ability to encumber or legally, I mean, not just tell somebody that they're going to have a child, but tell somebody else to do it, but to do it yourself, that there is not a sufficient ownership interest to constitute alter ego. So it really is a ready avenue to avoid debtors, actually. If we use your definition, it's a built-in recipe for debt avoidance. Well, isn't all, aren't all fraudulent conveyances that way if they survive the statute of limitations? Well, we're talking about the entire trust, actually. Well, I know we are, Your Honor, but, you know, ultimately... Is that a good thing? Trust should be used to avoid debt over fraudulent purposes. Well, neither should direct transfers, Your Honor. There is a law, a body of law that allows for the avoidance of such transfers. I totally agree they should not be, you know, that's actually not an issue. Had we challenged or let me just say that the appellees in this case do not necessarily acknowledge that it was a correct finding that it was a fraudulent conveyance, it was a point we didn't appeal for strategic reasons, but there is not an acknowledgment here that it was actually done for the purpose of avoiding creditors. And before I totally run out of time, I do want to remind the case, the court of the Postal Instant Press case, which is a California court of appeals case that ruled that under California law, there is no reverse piercing of the corporate veil in that case, that when you are seeking to make the assets of an entity liable for the debts of an individual, which is the case we have here, the trustee is trying to bring these assets back into the individual's bankruptcy estate, that that is not recognized by California law. And in fact, that court, in discussing the reasons for its ruling, looked to fraudulent conveyance law and said, when you're going in that direction, you are really looking at a transfer from the individual into the corporation or other entity. That is the Postal Instant Press case, Your Honor. I raised that in a letter subsequent to the final brief. You've exceeded your time, counsel, so if you could wrap up. I'm sorry. I'll stop right there. Thank you. Rebuttal. Let me address the last point first. The reverse piercing theory that was just advanced by counsel was waived. It was not addressed either at the bankruptcy court or at the district court level. And indeed, the PIP opinion, the Postal Instant Press opinion that counsel just referred to, came out prior to the filing of their second brief on cross-appeal and was not raised. In any event, that is not the law. Well, they can do a 28J letter if there's precedent that they want to. It's very liberal in terms of what cases may be included in the 28J letter. If the court would look at the case of United States v. LaPierre, 998 F. 2nd, 1460, jump site is 1466 Note 5. It is inappropriate tactic for a party to use a Rule 28J letter to raise new issues. Right. I understand that, but you said the case came out before they did their brief, and so I was just addressing that point. But I take your point that this was not an issue in the bankruptcy court. It is also not the law in California, Your Honor. Again, we're dealing with a trust here, not a corporation. And under California law, a plaintiff may pursue a claim that a trust is liable as the alter ego of an individual defendant for the defendant's obligations. Case I would cite to is a California Supreme Court case, Wood v. Ellingcourt, 20 Cal 3rd, 353. The jump site is 365. Also, the Cohen case that we cited in our brief was a situation where there was a, quote, reverse piercing. In other words, the court found that the trust was to be disregarded. And finally, the United States v. Boise case also is a similar type of case. So that simply isn't the law in California. It's not even the law with regard to corporations. The Taylor v. Newton case, 117 Cal F 2nd, 752. Jump site, 760, 61, held that a corporation can be held liable for a shareholder's debt to a third-party creditor. The case of Hillman v. Hillman Land Company, 81 Cal F 2nd, 174, held the same. Now, counsel indicated that it was her view that under California, there's no California case law that indicates that equitable ownership has validity in this state. That's simply not the case. The Troik opinion at pages 38 and 39 expressly said, equitable ownership has been inferred despite lack of actual ownership, provided other indicia of control exist. And that's exactly what we have in this situation. Do you have a case where a trust has actually been invalidated? That was her other point, that there's no case in California where a trust has actually been invalidated. What they, the language that is used is disregarded. In the Wood case that I just cited, the trust was disregarded. In Riddick, essentially, they disregarded the trust to the extent they needed to do so to get the consideration needed for the spouse. So in this case, if that principle were to be applied, then the trust would be disregarded and the assets would be placed into the estate of the bankrupt? Yes. In this case, what would happen is the trust would be a non-entity. It's void ab initio. And what that means is that Mr. Briones, the purported trustee, has been holding the assets all these years as a resulting trustee for Mr. Michaels, and then when Mr. Michaels filed his bankruptcy petition for Mr. Michaels' bankruptcy estate, it would then be available to the creditors of the estate for Your Honor, also, I want to, the case I was citing to was the own XRO own case, 713F 2nd, 1461. And that reads, in the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently. Yes, we understand that. The only complication is that once our court has opined on that, then we're bound to follow the precedent of our court rather than looking to the state courts. And Your Honor, I wish I had the citation at my fingertips, but we did address that issue in our briefs. There is a Ninth Circuit decision where, indeed, the Ninth Circuit decision is the one where Mr. Michaels was found guilty. And as a final point, with regard to the apartment trust, the court did make a number of findings and made a number of statements that did indicate that Mr. Michaels dominated and controlled. First of all, the court indicated as a finding he had substantial influence over Mr. Brioni's decisions. He had Mr. Brioni's actions with respect to the apartment trust funds were substantially influenced by Mr. Michaels. And these were some of the statements that Mr. — excuse me, that the bankruptcy court made during its — when it was rendering its final opinion. Quote, Mr. Brioni's functioned as nothing more than the person who signed the checks. All of the apartment trust acts had Mr. Michaels' imprint on it. Everything the apartment trust did was Well, why do you think that the bankruptcy court didn't find that the apartment trust was an alter ego? Well, the court tells us. And it was two reasons. First of all — So that was a beneficiary? Well, I suppose there's three reasons, yes. First of all, Mr. Brioni signed the checks. And the bankruptcy court felt that was important, even though with regard to the Grove Trust, it did find there was an alter ego situation where Mr. Brioni also wrote the bankruptcy court made this rather odd comment that the activities were not, quote, outwardly egregious and fit within what could be considered a legitimate interest for the child as well as the parent. Well, we would submit, as we do in our brief, that's not the standard. The standard is control. And based upon the court's comments, both with regard to the bankruptcy, both with regard to the Grove Trust and the apartment trust, there was complete domination by Mr. Michaels and an alter ego finding should be found. And then with regard to whether Sidney Michaels, the beneficiary, whether designating her as a beneficiary was a proper purpose, that's a red herring. Nobody has ever argued that designating the daughter as a beneficiary was not a proper purpose. Well, what if you have a combination of a proper purpose and an illegal purpose? That's what this is all about, that the wording of the trust instrument itself was properly worded. But obviously, no author of a trust is going to state my purpose in creating this trust is to defraud my creditors. And if one were to find that simply because there's a proper beneficiary, a trust survives, that would essentially turn probate code 15203 on its head. To find the intent of the settler, you have to go behind the wording of the instrument itself. And that was stated by the California Supreme Court in the Davenport case.
judges: Marbley, Goodwin, Rawlinson